IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

|  |  |  |
|---|---|---|
| ROBERTS GRAVES, | ) ) ) ) | |
| Plaintiff, | ) ) | Case No. CV  06-395-S-EJL-MHW |
| v. | ) ) | **REPORT AND RECOMMENDATION** |
| GEORGE FOX UNIVERSITY,<br>an Oregon corporation, | ) ) ) ) | |
| Defendant. | ) ) | |

Currently pending before the Court is Defendant's Motion to Compel Mediation and Binding Arbitration and Stay Proceedings (Docket No. 5), filed December 19, 2006. For the following reasons, the motion will be granted.

**REPORT**

**I.
Background**

Plaintiff Roberts W. Graves ("Plaintiff") brings this action against Defendant George Fox University ("Defendant" or "GFU") seeking damages for breach of employment contract, breach of implied covenant of good faith and fair dealing, discrimination in violation of the Americans with Disabilities Act ("ADA") and Idaho Human Rights Act ("IHRA"), and negligent and/or intentional infliction of emotional distress. On June 11, 2004, Plaintiff was hired by Defendant for the 2004-2005 academic year as an Admissions Counselor in the professional studies program. At the time he was hired, Plaintiff alleges he had been diagnosed with Attention

**Report and Recommendation - Page 1**

Deficit Disorder (ADD).  Plaintiff alleges that during his employment he was subject to jokes about his ADD and comments about his lack of focus.  On May 17, 2005, Plaintiff alleges he was offered a contract for the 2005-2006 academic year which included a raise.  (*See* Plaintiff's Amended Complaint and Demand for Jury Trial, Docket No. 4, Ex. A.)   Plaintiff alleges that no time prior to September 2, 2005 was he ever reprimanded or disciplined regarding any aspect of his job performance nor had he heard any negative comments about his job performance.  On September 2, 2005, Plaintiff alleges he was informed by his supervisors that he was being terminated for making inaccurate statements regarding his professional accomplishments and for using the university copier to make personal copies.

## II.
## Defendant's Motion to Compel Mediation & Binding Arbitration

Plaintiff initially applied for a position with Defendant in April of 2004.  On April 25, 2004, he signed an employment application which included the following clause:

> I agree that any disputes arising from my employment or termination of my employment will be resolved under the grievances procedure that is in effect during my employment with George Fox University.  I understand that no representative of the institution except for the president has any authority to enter into any agreement for employment for any specified period of time, or to make any agreement contrary to the foregoing.

(Affidavit of Gregory C. Tollefson in Support of Defendant's Motion to Compel Mediation and Binding Arbitration and to Stay Proceedings, "Tollefson Aff.," Docket No. 5-3, Ex. A.)  Over a month later, on June 2, 2004, Plaintiff signed an employment contract with Defendant for the 2004-2005 academic year.  This contract contained the following clause:

> The parties agree that all claims, disputes and other matters in question between the parties arising out of or relating to this contract or the breach thereof, shall be decided *in accordance with*

**Report and Recommendation - Page 2**

>   the rules set forth in the *Dispute Resolution Process described in the Employee Handbook* unless state or federal law precludes such process.

(Tollefson Aff., Ex. B) (emphasis added).  On or about June 28, 2004, when he began employment, Plaintiff received a copy of the George Fox University Employee Handbook.  (*Id*.)  On July 7, 2004, he signed an acknowledgment that he understood it was his responsibility to read the Handbook and knew to contact the university if he had any questions or needed help understanding it.  (Tollefson Aff., Ex. D.)

The Employee Handbook has two provisions that are relevant to whether arbitration may be compelled in this case.  First, there is Section 2.2.2., the "Antidiscrimination and Antiharassment Policy" which applies to harassment due to "race, color, sex, marital status, religion, age, national origin, citizenship status, workers' compensation status, physical or mental disability, veteran status...."  This section provides a procedure for any employee who believes he or she has witnessed discrimination or harassment or been discriminated against.  This procedure includes reporting the incident to a supervisor, director of human resources, the provost or any vice president and provides that the complaint will be investigated promptly.  The Handbook then states:

>   While the above processes for dealing with allegations of discrimination or harassment are in lieu of the Dispute Resolution Process (described in Section 2.7), if the above efforts fail to resolve the complaint, the employee is expected, to the extent permitted by applicable law, to enter into mediation or legally binding arbitration in accordance with the Rules of Procedure for Christian Conciliation of the Institute for Christian Conciliation.

(Tollefson Aff., Ex. C, pp. 9-10.)

Section 2.7 addresses GFU's "Dispute Resolution Process."  It details four steps the

**Report and Recommendation - Page 3**

employee must follow if he or she has a grievance.  The Section also provides that: "If the steps fail to resolve a grievance or dispute, the employee is expected to enter into mediation or legally binding arbitration in accordance with the Rules of Procedure for Christian Conciliation of the Institute for Christian Conciliation."  Notably, the beginning of this Section contains the following paragraph:

> This policy is not intended to apply to complaints or problems related to racial, sexual, or other forms of discrimination or harassment prohibited by applicable law.  Any concerns about discrimination or harassment should be reported immediately, following the steps outlined in the University's Antiharassment Policy in Section 2.2.2.

(Tollefson Aff., Ex. C., pp. 15-16.)

On May 17, 2005, Plaintiff was offered and signed an employment contract for the 2005-2006 academic year.  (*Id*., Ex. E.)  This contract contained the same clauses as the previous contract, including the one relating to the Dispute Resolution Process.  (*Id*.)  Defendant insists that all of Plaintiff's claims are related to his employment relationship with GFU and are therefore subject to the arbitration agreement set forth above.  Defendant's counsel requested that the complaint be dismissed so that they may proceed with setting up arbitration but received no response from Plaintiff's counsel regarding this request.

### III.
### Discussion

**A.   Arbitration in General**

In general, arbitration is a favored remedy.  *See Int'l Ass'n of Firefighters, Local No. 672 v. City of Boise City*, 136 Idaho 162, 167, 30 P.3d 940, 945 (2001); *AT&T Techs., Inc. v. Communications Workers of America*, 475 U.S. 643, 650 (1986) (in interpreting arbitration

clauses, doubts are to be resolved in favor of coverage). The Federal Arbitration Act ("FAA") provides:

> A written provision in any maritime transaction or a contract evidencing a transaction involving interstate commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or equity for revocation of any contract.

9 U.S.C. § 2.  It has been held by the United States Supreme Court that the FAA applies to employment contracts, with the exceptions of those employees excluded from coverage by 9 U.S.C. § 1, namely transportation workers.  *Circuit City Stores, Inc. v. Adams*, 532 U.S.105, 119 (2001).

   The court's role under the FAA is limited to determining whether a valid agreement exists and if it does, whether the agreement encompasses the dispute at issue.  *Chiron Corp. v. Ortho Diagnostic Systems, Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000).  *See also Int'l Ass'n of Firefighters, Local No. 672 v. City of Boise City*, 136 Idaho 162, 167, 30 P.3d 940, 945 (2001) (noting that the court's scope of review is confined to ascertaining whether the party seeking arbitration is making a claim which on its face is governed by the parties' contract).  In determining whether a valid arbitration agreement exists, courts can look to state law to resolve issues concerning the validity, revocability, and enforceability of contracts in general.  *Ticknor v. Choice Hotels Intern., Inc.*, 265 F.3d 931, 936 (9th Cir. 2001).  Generally applicable contract defenses, such as fraud, duress or unconscionability, may be applied to invalidate arbitration agreements.  *Id*.  A court may not invalidate arbitration agreements under state laws applicable only to arbitration agreements.  *Id*.

**Report and Recommendation - Page 5**

Defendant maintains there is a federal policy, evidenced by the FAA, in favor of arbitration. Defendant argues that as the claims in this case fall within the scope of the arbitration agreement, which includes every type of claim pertaining to Plaintiff's employment, this case should proceed to binding arbitration and the proceedings in this Court should be stayed. Plaintiff argues that the case should not be stayed and arbitration ordered on the grounds that the agreement is both procedurally and substantively unconscionable.

**B.    Unconscionability**

In Idaho, unconscionability is a question of law. *Bakker v. Thunder Springs-Wareham, LLC*, 141 Idaho 185, 192, 108 P.3d 332, 339 (2005). A contract or contractual provision, including an agreement to arbitrate, may be voided if it unconscionable, meaning that it is both procedurally and substantively unconscionable. *Lovey v. Regence BlueShield of Idaho*, 139 Idaho 37, 41-42, 72 P.3d 877, 881-82 (2003).

    **1.    Procedural Unconscionability**

Procedural unconscionability relates to the bargaining process and substantive unconscionability focuses upon the terms of the agreement itself. *Lovey v. Regence BlueShield of Idaho*, 139 Idaho 37, 41-42, 72 P.3d 877, 881-82 (2003). Procedural unconscionability may arise when the contract was not the result of free bargaining between the parties. *Id*. Two indicators of procedural unconscionability are lack of voluntariness and lack of knowledge. *Id*. Lack of voluntariness can be shown by factors such as the use of high-pressure tactics, coercion, oppression or threats short of duress. *Id*. It can also be shown by great imbalance in the parties' bargaining power with the stronger party's terms being nonnegotiable and the weaker party being prevented from being able to contract with another party or refrain from contracting at all.

*Id.* Lack of knowledge can be demonstrated by lack of understanding as to the contract terms stemming from the use of inconspicuous print, ambiguous wording, or complex legalistic language. *Id.* It also can be shown by lack of opportunity to examine the contract and inquire about terms, or by the disparity between the parties in terms of sophistication, knowledge or experience. *Id.*

### 2. Substantive Unconscionability

Substantive unconscionability focuses upon the terms of the contract or provision at issue. *Lovey v. Regence BlueShield of Idaho*, 139 Idaho 37, 41-42, 72 P.3d 877, 881-82 (2003). A provision or contract will be found to be substantively unconscionable if it is a bargain "no person in his or her senses and not under delusion would make on the one hand and that no honest and fair person would accept on the other." *Id.* Factors to consider include whether the provision is one-sided or oppressive. *Id.* Additionally, in determining unconscionability, the court must consider the purpose and effect of the terms at issue, the needs of the parties, the commercial setting of the agreement and the reasonableness of the terms at the time of contracting. *Id.* at 42-43.

### C. Analysis

Plaintiff argues that arbitration agreement is both procedurally and substantively unconscionable. Plaintiff maintains that the agreement is procedurally unconscionable because of the "stark inequity" in bargaining power between the two parties and the fact that Plaintiff was essentially presented with a "take it or leave it" agreement, which left Plaintiff with no choice but to sign the employment application and employment contract if he wanted to work for Defendant. Plaintiff also argues that the agreement was procedurally unconscionable because of

unfair surprise in that the arbitration terms Plaintiff was agreeing to by signing the contract and application were hidden in the Employee Handbook which he was not given until after he signed the application and contract. Plaintiff asserts that the contract is substantively unconscionable because the arbitration agreement was a one-way provision, its practical effect was to limit claims by the employee against the university as there is a very remote chance that GFU would ever sue an employee. Additionally, Plaintiff maintains that the agreement is also substantively unconscionable because it is one-sided and can be unilaterally terminated or modified by the university at its sole discretion. Plaintiff asserts that a term is not "bargained for" when one party can change it at its sole discretion.

     Plaintiff relies heavily on the Ninth Circuit case of *Ingle v. Circuit City Stores, Inc.* in making these arguments. 328 F.3d 1165 (9th Cir. 2003). That case involved an employee who sued a former employer for employment discrimination. *Id*. at 1169. The court found that the arbitration agreement was unconscionable under California law. *Id.* The court determined the contract was procedurally unconscionable because of the "stark inequality of bargaining power" between the plaintiff and her employer. *Id*. at 1171-72. The court also noted that the plaintiff did not have a "meaningful opportunity to opt out of the arbitration agreement, nor did she have any power to negotiate the terms of the agreement" and since the employer presented the arbitration agreement on an "adhere-or-reject" basis, it was procedurally unconscionable. *Id*. at 1172. In regards to substantive unconscionability, the court noted that several terms of the arbitration agreement were one-sided which operated to benefit the employer at the employee's expense, especially the fact that the arbitration agreement expressly only covered claims brought by an employee. *Id*. at 1173. The court also stated that "[t]he only claims realistically affected

by an arbitration agreement between an employer and an employee are those claims employees bring against their employers." *Id*. 1174.[1]

Defendant argues that the arbitration provision was not procedurally unconscionable as there was no lack of voluntariness. Defendant submits that Plaintiff sought out employment with Defendant, signed the application and days later signed the contract on his own volition and there are no facts indicating pressure to enter into the contract. *See Lovey v. Regence BlueShield of Idaho*, 139 Idaho 37, 43, 72 P.3d 877, 882 (2003) (stating that an "adhesion contract cannot be held procedurally unconscionable solely because there was no bargaining over the terms.")

Defendant also maintains there was not lack of knowledge on the part of Plaintiff. Defendant points out that the employment application was only one page and written in "plain English" and that Plaintiff was not offered the job until seven weeks after the signed this employment application. Defendant also notes that Plaintiff agreed on three separate occasions to the arbitration provision, and that as he signed the same contract for the 2005-2006 academic year as he did for 2004-2005, he had eleven months to consider that agreement and its terms. Defendant submits that Plaintiff has not claimed he was coerced, or that he did not have enough time to consider the agreement. Lastly, Defendant asserts that negligence by a party, *i.e.*, not reading the contract, is not sufficient grounds for setting aside a contract. *See Liebelt v. Liebelt*, 118 Idaho 845, 801 P.2d 52 (Ct. App. 1990). Regarding substantive unconscionability,

---

[1] It should be noted that in its analysis, the Ninth Circuit repeatedly states that its decision is being made under "California law." Defendant submits that California has a history of being very hostile towards arbitration agreements in general. *See* Defendant's Reply Memorandum in Support of Motion to Compel Mediation and Binding Arbitration and to Stay Proceedings, "Defendant's Reply," Docket No. 9, p. 3, n. 1.) Defendant also cites to a case out of the Northern District of California in which the court notes that *Ingle*'s presumption that a contract between an employer and employee is substantively unconscionable is inconsistent with the approach taken by California courts. *Miyasaki v. Real Mex Restaurants, Inc.*, 2006 WL 2385229 at *4-5 (N.D. Cal. 2006). The court also notes that *Ingle*'s presumption has "been all but ignored by California courts." *Id*. at *5. Additionally, Defendant points out that the arbitration provision in *Ingle* was drastically different from the one at issue in this case.

**Report and Recommendation - Page 9**

Defendant argues that Plaintiff has failed to prove that the arbitration provision was "oppressive" as the provision is neutral and applies to both the employees and GFU. Defendant also maintains that *Ingle* is distinguishable because the arbitration clause at issue in that case was not mutual and contained different terms. 328 F.3d 1165 (9th Cir. 2003).

The most recent law in Idaho on unconscionability of contracts, specifically arbitration provisions, is *Lovey v. Regence BlueShield of Idaho*. 139 Idaho 37, 72 P.2d 877 (2003). That case involved an arbitration clause in an insurance contract. *Id*. at 41. The court stated that adhesion contracts were a fact of modern life and not against public policy but that they could be found procedurally unconscionable if the plaintiff was "prevented by market factors, timing or other pressures" from being able to contract with another party." *Id*. at 43. The court stated that there was no evidence that plaintiff requested, but was denied, an opportunity to review a copy of the policy before applying for coverage and that the policy was identical to the policy she had purchased four months earlier and therefore she had four months to review the terms of the policy. *Id*. at 44. It was also held that the defendant's failure to offer unsolicited explanations to the various provisions in its insurance contract was not a factor indicating procedural unconscionability. *Id*. The court lastly noted that all of the terms of the contract were printed in the same size font and that each provision was separately numbered, titled and set off by spacing from the preceding and following provisions so the clause was not "hidden" or "inconspicuous." *Id*. The court also found the arbitration provision was not substantively unconscionable, noting that it was not one-sided or oppressive because it applied equally to both parties. *Id*. at 45.

The law in our sister states of Oregon and Washington is much the same. The Oregon Court of Appeals held that, in spite of the plaintiff's claims regarding unequal bargaining power

**Report and Recommendation - Page 10**

and lack of opportunity to negotiate terms, the agreement was not procedurally unconscionable because defendant did not use high pressure tactics, plaintiff had time to read through the forms and ask questions, the arbitration clause was not hidden and unequal bargaining power alone was not sufficient to render the agreement unconscionable. *Motsinger v. Lithia Rose-FT, Inc.*, 156 P.3d 156, 160-62 (Or. Ct. App. 2007). The court disagreed with plaintiff's argument that the agreement was substantively unconscionable because it was not mutual in that it only required *employees* to arbitrate. *Id*. at 162. The court noted that a blanket rule making unilateral provisions to arbitrate *per se* unconscionable would be inconsistent with Oregon law. *Id*. at 165. In a case out of Washington, the court noted that as the arbitration agreement applied to all disputes brought by either employee or employer, it could not be found substantively unconscionable on those grounds. *Adler v. Fred Lind Manor*, 103 P.3d 773 (Wash. 2004.)

In this case, the Court agrees with the arguments advanced by Defendant and the reasoning set forth by the Idaho Supreme Court in *Lovey v. Regence BlueShield of Idaho*. 139 Idaho 37, 72 P.3d 877 (2003). Plaintiff had ample time to consider the terms of the contract and ask questions about any provisions he was concerned about, especially given the fact that he had been employed for nearly a year when he signed the contract for the 2005-2006 academic year. The arbitration provision was not hidden in the Employee Handbook, but separately labeled and in the same size font as the rest of the provisions. Additionally, as held by the Idaho Supreme Court in *Lovey v. Regence BlueShield of Idaho*, lack of bargaining alone will not make an adhesion contract procedurally unconscionable. *Id*. The provision is also not substantively unconscionable. The arbitration provision was not one-sided or oppressive but mutual. Finally, both substantive and procedural unconscionability are required for an agreement to be found

unconscionable and here the Court has found neither.

## C. ADA, IHRA and Negligent and/or Intentional Infliction of Emotional Distress Claims

Regarding Plaintiff's claims under the Americans with Disabilities Act, the United States Supreme Court has held that federal statutory claims can be "appropriately resolved through arbitration" and that agreements to arbitrate such claims have been enforced. *Green Tree Financial Corp.-Alabama v. Randolph*, 531 U.S. 79, 89 (2000). In determining whether federal statutory claims may be arbitrated, a court must first ask whether the parties agreed to submit their claims to arbitration and then ask whether Congress has expressed an intention to preclude a waiver of judicial remedies for those statutory rights. *Id*.

Defendant asserts that both prongs of the *Green Tree* test are satisfied. Defendant maintains that the first prong is satisfied because all discrimination claims are subject to the arbitration provision of the contract. Although the Handbook contains language in Section 2.7 that states the dispute resolution process does not apply to discrimination claims, the section on discrimination claims, Section 2.2.2, states that if the efforts outlined in that section fail to resolve the dispute, the "employee is expected, to the extent permitted by applicable law, to enter into mediation or legally binding arbitration..." (Tollefson Aff., Ex. C, p. 10) Defendant maintains that in accordance with these two sections, discrimination claims are subject to the arbitration provision, however discrimination disputes are handled differently from other disputes at the outset and that is the reason for the two different provisions and the language excepting discrimination disputes from coverage under Section 2.7 (Dispute Resolution Process). As to the second prong, Defendant points to 42 U.S.C. § 12212 from the ADA, which states: "Where appropriate and to the extent authorized by law, the use of alternative means of dispute

**Report and Recommendation - Page 12**

resolution, including settlement negotiations, conciliation, facilitation, mediation, factfinding, minitrials, and arbitration, is encouraged to resolve disputes arising under this chapter." Defendant submits that this statute demonstrates that Congress did not intend to exclude the ADA from the FAA's coverage.

Plaintiff argues that the arbitration provision only applies to claims "arising out of" the employment contract and as the ADA, IHRA and intentional and/or negligent infliction of emotional distress claims "arise out of" federal and state statutes and state common law, they do not "arise out of" the employment contract and the arbitration provision does not apply to them. *See Lovey v. Regence BlueShield of Idaho*, 139 Idaho 37, 47, 72 P.3d 877, 887 (2003) ("If the contract places the parties in a unique relationship that creates new duties not otherwise imposed by law, then a dispute regarding a breach of a contractually-imposed duty is one that arises from the contract.")  Plaintiff also maintains that the express language of the arbitration provision in Section 2.7 excludes discrimination claims and therefore Plaintiff's discrimination claims should not be submitted to arbitration.

Section 2.7 states it applies to claims "arising out of employment disputes."[2]  As noted by Defendant, discrimination and harassment claims are still subject to arbitration (Tollefson Aff., Ex. C, p. 10.) but these claims are to be handled differently initially, due to their sensitive nature, and that is why they are addressed under a separate section (Section 2.2.2) and excepted from the Dispute Resolution Process (Section 2.7).  The last paragraph of Section 2.2.2 states that even

---

[2]  The employment contract does state it applies to  "claims...arising out of or relating to this contract...", however the Employee Handbook is also part of the contract and it states it applies to  "claim[s]...arising out of employment disputes..."  (Tollefson Aff., Exs. C, E.)  *See Ferguson v. City of Orofino*, 131 Idaho 190, 193, 953 P.2d 630, 633 (Ct. App. 1998) ("It is well settled in Idaho law that terms of an employee handbook or personnel manual can constitute an element of the employment contract.")

**Report and Recommendation - Page 13**

though these types of claims are excepted from the Dispute Resolution Process (Section 2.7), if they are not resolved they are still to be subject to arbitration. These claims fall within the scope of the arbitration provision. Also, the second prong of *Green Tree* is satisfied. The express language of 42 U.S.C. § 12212 clearly indicates that Congress did not intend to preclude any waiver of judicial remedies in ADA lawsuits.

## **RECOMMENDATION**

Based upon the foregoing, the Court being otherwise fully advised in the premises, the Court **hereby RECOMMENDS that:**

1) Defendant's Motion to Compel Mediation and Binding Arbitration and Stay Proceedings (Docket No. 5), filed December 19, 2006, be GRANTED.

Written objections to this Report and Recommendation must be filed within ten (10) days pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1, or as a result of failing to do so, that party may waive the right to raise factual and/or legal objections to the United States Court of Appeals for the Ninth Circuit.

DATED: May 22, 2007

Honorable Mikel H. Williams
Chief United States Magistrate Judge